IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 92-1932

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EUGENE JESSIE CHAPMAN,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

(October 29, 1993)

Before HIGGINBOTHAM, DAVIS, and SMITH, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

This case presents issues under the firearms statutes including a question of the sufficiency of the proof that a defendant knew he remained under indictment after his conviction in a Texas court. We find that the government failed to prove Chapman knew he was under indictment when he denied it while purchasing a gun. We reverse his conviction on the two counts that required this proof. We affirm Chapman's conviction on two counts of receiving a gun while under indictment. With these two counts, the government did not have to prove Chapman's knowledge of his legal status.

The government charged Jesse Eugene Chapman with two counts of making false statements in connection with the acquisition of firearms, in violation of 18 U.S.C. §§ 922(a)(6), 924(a)(1), and two counts of receiving firearms while under indictment, in violation of 18 U.S.C. §§ 922(n), 924(a)(1)(D).

On February 13, 1991, Chapman was convicted of burglary, a state crime punishable by imprisonment for over one year. He received ten years probation. He appealed. While his appeal was pending, Chapman purchased a Cobray M-11 9 millimeter pistol from a federally licensed firearm shop. He signed ATF form 4473, answering "no" when asked whether he was "under indictment" for any crime punishable by imprisonment for over one year. Police later arrested Chapman for assault with the Cobray pistol.

While the appeal was pending, and a few days later, Chapman purchased a .22 caliber pistol and a .38 caliber Derringer from the same gun shop. Chapman again completed ATF form 4473, making the same response. Police later arrested Chapman for speeding. Police searched his car finding the loaded Derringer, the .22 caliber pistol, and crack cocaine in small plastic bags.

The district court denied a motion to dismiss the firearms charges for failure to state an offense. A jury convicted on all counts. Chapman appealed. We affirm two counts, and reverse two counts.

II

The government charged Chapman with knowingly making a false statement when he answered "no" to the "under indictment" question, and with acquiring a firearm while "under indictment." He argues that the evidence did not show that he was "under indictment" or that he knew about his status when he purchased the firearms.

Under 18 U.S.C. § 922(a)(6), the government must prove that Chapman knowingly made a false statement to a federally licensed firearms dealer with respect to a fact material to the lawfulness of the sale. Under 18 U.S.C. § 922(n), the government must prove that Chapman was "under indictment" and that he willfully purchased the firearms.

The federal firearms statute defers to state law on the definition of "conviction." That definition, the government says, implicitly defines "under indictment": "[W]hat constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." 18 U.S.C. § 921(20)). Under Texas law, though convicted and sentenced, Chapman remained "under indictment" during the appeal of his conviction. Johnson v. State, 784 S.W.2d 413, 414 (Tex. Crim. App. 1990).

It was stipulated that Chapman had been indicted, stood trial, and been found guilty and sentenced for the state burglary offense; that Chapman had appealed his burglary conviction. There was evidence that he purchased the firearms during the pendency of his appeal.

3

Whether the government proved sufficient facts to demonstrate that Chapman knowingly made a false statement in response to the "under indictment" question is more problematic.  The government had to prove that Chapman knew he was "under indictment" to prove that he knowingly made a false statement.

The government points to the fact that his appeal bond stated, "Appeal Bond (After Indictment--Felony--Personal Bond)," maintaining that this epigraph advised Chapman that he remained "under indictment" while on bond during the pendency of his appeal.  This document, however, proves nothing, as "After Indictment," if anything, suggests that Chapman no longer remained "under indictment," but had achieved the status of "convicted felon."

Moreover, the government points to the fact that an ATF agent questioned Chapman about his purchases while Chapman served time in jail.  After the agent inquired about his response to the "under indictment" question, Chapman reportedly told the agent, "Well, I messed up on that one."  This statement sheds little light on whether Chapman knew that he was "under indictment" when he purchased the firearms.

When the government charges that a defendant knowingly lied about his legal status, it must offer proof that he knew his status.  In a practical sense, ignorance of the law is here a defense because the charged falsity rests on defendant's untrue statement of his legal status.  Chapman knew what had happened to him but there was no proof that he knew what the legal label was, and that's the question the government asked and now says he lied

4

about.  Of course, "convicted felon" is also a legal characterization of fact, as are many "factual" matters.  Proof of conviction alone may be sufficient for a jury to infer that defendant knew of his status as a convicted felon.  The rationality of inferences ultimately rest on common sense--a shorthand that experience has taught us the probabilities.  This ordinarily is a quintessential jury question.  There is a point, however, at which the status is so beyond common understanding, arcane, and fact to inference so attenuated, we must find that any inference alone is not enough.

To be sure, Chapman also stated on ATF form 4473 that he was not a "convicted felon," and a jury could have inferred that he intended to lie in response to that question.  The statement was actually true, however, because under Texas law, Chapman was not a "convicted felon" during the pendency of his appeal, the government could not have charged Chapman with making a false statement denying he was a convicted felon.  This prosecutor's dilemma is no more than a creature of the government's form.  That the prosecutor is uncertain of the "correct" response to an essentially legal question he urges was knowingly and falsely given is a large warning.  It was not heeded.

### III

The district court properly denied Chapman's pretrial motion to dismiss the Section 922(a)(6) and Section 922(n) counts for failure of the indictment to charge an offense.  The indictment stated an offense under both counts because, as a matter of law,

5

Chapman remained "under indictment" following the guilty verdict and during the pendency of his appeal.

## IV

The district court properly charged the jury that Chapman was "under indictment" when he purchased the firearms. He claims that this instruction violated his due process right to have the government prove each element of the Section 922(a)(6) and 922(n) counts. Chapman and the government, however, stipulated that a jury had found him guilty of burglary, and that he purchased the firearms during the pendency of his appeal. With the stipulation of fact, the legal question of Chapman's status was the only remaining relevant issue. There was no issue here that would "depend on the probative value of the evidence. . . ." United States v. Vidaure, 861 F.2d 1337, 1340 (1988), cert. denied, 489 U.S. 1088 (1989).

## V

The sentencing guidelines state that the offense level for the firearms convictions should be 12 because he was convicted under Section 922(n). U.S.S.G. § 2K2.1(a)(2) (Nov. 1990). The guidelines also provide that if a defendant used or possessed a firearm in connection with the commission or attempted commission of any other offense, the offense level should be calculated by applying U.S.S.G. § 2X1.1 (Nov. 1990) if to do so would result in a higher offense level. U.S.S.G. § 2K2.1(c)(2) (Nov. 1990). Section 2X1.1 requires application of the guideline for the offense committed with or facilitated by the firearm, including any

adjustments required by the guidelines for that offense. We reject Chapman's argument that the district court should have applied U.S.S.G. § 1B1.3(a)(1) (Nov. 1990), concerning "relevant conduct," and that his firearms offenses cannot meet the definition of "relevant conduct."

The district court properly determined that the offense level for the firearm used during the shooting offense was 20, U.S.S.G. § 2A2.2 (Nov. 1990), and that the offense level applicable for the firearms used during a drug offense was 22. U.S.S.G. § 2D1.1(a)(3)(C)(15) (Nov. 1990). The court selected the higher offense level of 22 from the drug offense, reduced it by 2 points for acceptance of responsibility, and sentenced Chapman using the offense level of 20.

In addition, Chapman argues that even if the district court was correct in principle in applying the alternative guideline for the drug offense, the trial court incorrectly concluded that the offense was that of possession with intent to distribute rather than simple possession. We disagree, Chapman carried individual bags of crack and a pistol, evidence that he was prepared for transactions and trouble in the marketplace.

Moreover, Chapman argues that the district court "double counted" by including Chapman's state conviction both in calculating the offense level and in computing the points for his criminal history. Chapman, however, waived any error based on this issue as he failed to raise it either in his written objections to the pre-sentence report or orally at the sentencing hearing.

7

At any rate, though U.S.S.G. § 4A1.2 (Nov. 1990) provides that a "prior sentence" includes only conduct that is not part of the instant offense, in this case, the instant offense was not the drug offense, but the unlawful acquisition of the firearms.  In other words, Chapman was not convicted in federal court of the drug offense, but of the firearms offense.  The drug offense entered the calculation only derivatively.

Our decision to  reverse Chapman's conviction on counts 1 and 3 upsets the district court's sentencing plan.  We vacate the sentence imposed and remand to the district court for resentencing upon counts 2 and 4.

AFFIRMED IN PART and REVERSED and REMANDED IN PART.